UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

DONNA WASHINGTON,                        )
                                         )
      Plaintiff,                        )
                                         )
v.                                       )   Case No. 18-CV-0674-CVE-FHM
                                         )
OKLAHOMA STATE DEPARTMENT OF             )
HUMAN SERVICES, CHARENE NOWICKI,         )
MARGARET EAGLER, TRINA STROUT,           )
ASHLEY DUGGER, SCOTT WOODSON,            )
NACISKA GILMORE, LATRESSA AVERY,         )
and VANNESSA STINNETT,                   )
                                         )
      Defendants.                       )

**OPINION AND ORDER**

Now before the Court are defendants Trina Strout, Scott Woodson, and Vannessa Stinnett's motion to dismiss (Dkt. # 17), defendants Charene Nowicki, Margaret Eagler, Ashley Dugger, Naciska Gilmore, and Latressa Avery's motion to dismiss (Dkt. # 18), and defendant Oklahoma Department of Human Services (OKDHS)'s motion to dismiss (Dkt. # 26).

On December 28, 2018, plaintiff Donna Washington filed a pro se complaint (Dkt. # 1) against defendants OKDHS and eight OKDHS employees, seeking relief pursuant to 42 U.S.C. § 1983 for alleged violations of her rights under the Fourth, Fifth, Ninth, and Fourteenth Amendments of the U.S. Constitution. Plaintiff seeks $20,000 in economic damages, $350,000 in non-economic damages, $500,000 in punitive damages, and a protective order against OKDHS on behalf of her family. Id. at 5. On February 12, 2019, defendants Strout, Woodson, and Stinnett filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. # 17). That same day, defendants Nowicki, Eagler, Gilmore, Avery, and Dugger also filed a motion to dismiss pursuant to Rule

12(b)(6) (Dkt. # 18). Plaintiff filed a response (Dkt. # 22) to the individual defendants' motions, and attached 128 pages of supporting documents.[1] The individual defendants jointly filed a reply (Dkt. # 24) to plaintiff's response. On March 29, 2019, OKDHS filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) (Dkt. # 24). Plaintiff has not responded to OKDHS's motion.

## I.

Pro se complaints are held to less stringent standards than pleadings drafted by lawyers, and must be construed liberally. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). Nevertheless, the Court should not assume the role of advocate for the pro se litigant. Id. Moreover, even pro se plaintiffs are required to comply with the "fundamental requirements of the Federal Rules of Civil Procedure." Ogden v. San Juan Cty., 32 F.3d 452, 455 (10th Cir. 1994). As an initial matter, the Court notes that certain portions of plaintiff's pro se complaint are fairly incoherent. To the extent the Court is able to decipher plaintiff's allegations, the complaint fails to provide sufficient details

---

[1] In her response (Dkt. # 22) to the motions, plaintiff submits additional factual and contextual allegations, as well as evidence and documents, all of which are omitted from her complaint. However, in deciding a Rule 12(b)(6) motion, "a federal court may only consider facts alleged within the complaint." Cty. of Santa Fe v. Pub. Serv. Co. of N.M., 311 F.3d 1031, 1035 (10th Cir. 2002). The Court's function "is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Tal v. Hogan, 453 F.3d 1244, 1252 (10th Cir. 2006). Moreover, a plaintiff may not amend her complaint simply by asserting new allegations in her response to a motion to dismiss. Rather, where, as here, more than 21 days have passed since plaintiff was served with the Rule 12(b) motions, plaintiff "may amend [her] pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). Accordingly, for the purposes of deciding the present motions, the Court considers the sufficiency of the factual allegations contained in plaintiff's pro se complaint only, and excludes from consideration the allegations asserted for the first time in plaintiff's response. As discussed in more detail below, however, the Court will grant plaintiff leave to file an amended complaint.

and contextual information to allow the Court to fully comprehend plaintiff's claims. The Court recites the allegations as asserted in plaintiff's pro se complaint.

Plaintiff alleges that, on June 12, 2018, she exercised her right to be free from governmental interference upon completion of a CPS[2] investigation for medical neglect/failure to obtain medical attention for plaintiff's minor. Dkt. # 1, at 6. On June 13, 2018, OKDHS called plaintiff to inform her that it had received claims that plaintiff was refusing to keep an EEG appointment scheduled for her child, and threatened to remove plaintiff's child from her home. Id. On June 14, 2018, plaintiff received another phone call from OKDHS, again claiming that plaintiff was refusing to keep the EEG appointment scheduled, and threatening to get the district attorney involved in order to remove plaintiff's child from her custody. Id. On June 15, 2018, CPS filed allegedly fraudulent reports of medical neglect with the court,[3] and then showed up to plaintiff's house with eight to ten police officers. Id. Plaintiff refused to let them into her house. Id. CPS then filed additional allegedly fraudulent reports with the court, and obtained an "unlawful warrant" to enter plaintiff's house and remove her child. Id. Later that day, CPS and eight to ten officers returned to plaintiff's house, kicked down her door, and aimed a semi-automatic rifle at plaintiff and her children. Id. The police officers allegedly threatened plaintiff, stating that all of her children would be taken if she did not cooperate. Id. The officers detained plaintiff. Id. The child's father arrived at plaintiff's house, and CPS allegedly deprived the father of his parental rights. Id. Without plaintiff's consent, the police

---

[2] Pursuant to Federal Rule of Evidence 201, the Court takes judicial notice of the fact that "CPS" refers to child protective services, and that child protective services are provided through OKDHS. Child Protective Services, OKLA. DEP'T OF HUMAN SERVS., http://www.okdhs.org/services/cps/Pages/default.aspx (last visited June 26, 2019).

[3] The Court assumes that plaintiff is referring to the District Court of Tulsa County, State of Oklahoma.

officers and defendant Gilmore forcefully removed plaintiff's son from the home and had him medically evaluated. Id. That evening, plaintiff received a phone call from defendant Avery, requesting placement options for plaintiff's child. Id. at 7. Plaintiff explained to Avery that there had been mistake. Id. Avery responded that she had tried to inform plaintiff that they were going to take her son, and that plaintiff had to take it up with the judge because plaintiff had presented her with this information too late. Id. After the medical evaluation report showed that plaintiff's child was stable with no medical concerns, OKDHS refused to return the child to plaintiff. Id.

On June 26, 2018, CPS again filed allegedly fraudulent reports with the court to have plaintiff's parental rights terminated. Id. Plaintiff sought help and support from the child's father, and, in response, OKDHS filed allegedly fraudulent reports with the court against the father, terminated the father's parental rights, and placed restrictions on his and plaintiff's visitations with the child. Id. CPS then had the child undergo allegedly unnecessary medical treatments and evaluations, did not allow plaintiff to attend any of the child's medical tests or evaluations, and refused to give plaintiff copies of paperwork from the doctors. Id. Plaintiff alleges that CPS conspired with an individual named Dr. Seigler to influence EEG results and to claim a seizure disorder. Id. Further, plaintiff alleges that CPS forced her child to see a therapist to convince him of a false disorder that he does not have. Id. Plaintiff alleges that defendant Nowicki "breached established agreement for conflict of interest regarding patient and doctor," and continued to force repeat testing of plaintiff's child during which misconduct had taken place. Id. at 8. Plaintiff filed a complaint with the Oklahoma Medical Board against Dr. Seigler. Id. Plaintiff alleges that, in response, defendant Nowicki placed tighter restrictions on plaintiff's communication with her child, demanded access to plaintiff's other children, and threatened to have the judge produce those

4

children if plaintiff did not comply. Id. Further, plaintiff alleges that CPS falsely removed funds by taking her child's disability check. Id. at 7.

On July 9, 2018, plaintiff informed defendant Nowicki that she was concerned about a child welfare worker's inappropriate behavior towards plaintiff's child. Id. at 8. Plaintiff alleges that her concerns were dismissed. Id. On July 10, 2018, plaintiff received an email from defendant Avery, stating that plaintiff was erratic and that her logic and deductions were conspiracy theories, and threatening to place the claim into plaintiff's permanent file. Id. On July 17, 2018, plaintiff emailed defendant Dugger regarding Nowicki's alleged misconduct. Id. No actions were taken against the misconduct. Id. On August 13, 2018, OKDHS documented allegedly false information on file, requiring plaintiff to undergo and complete unnecessary mental health treatment and other required programs, and to have those treatment results released to OKDHS in order to have plaintiff's child returned to her. Id.

On September 10, 2018, after plaintiff had regained custody of her child, OKDHS filed a temporary order to supervise the case to maintain access to plaintiff's child. Id. On September 17, 2018, after obtaining evidence that the EEG appointment scheduled by plaintiff was in fact cancelled by OKDHS, plaintiff asked defendant Eagler to present this evidence and to have the case dismissed. Id. at 9. Plaintiff alleges that defendant Eagler failed to intervene, and informed her that, pursuant to state law, she would need to speak to the child privately and away from plaintiff. Id. Plaintiff refused to allow the private communication. Id. Plaintiff alleges that CPS conspired with her child's school to produce seizure-like activity and claim a false seizure. Id. Plaintiff's case was dismissed on November 26, 2018. Id. Plaintiff alleges that defendant Eagler informed her that, even with the case being dismissed, "it will still read differently on other files and records." Id.

5

**II.**

The Court first considers defendant OKDHS's motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction based on Eleventh Amendment sovereign immunity. Federal courts are courts of limited jurisdiction and, as the party seeking to invoke federal jurisdiction, plaintiff bears the burden of proving that jurisdiction is proper. Southway v. Cent. Bank of Nigeria, 328 F.3d 1267, 1274 (10th Cir. 2003). A court lacking jurisdiction "cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974). Where, as here, the Rule 12(b)(1) motion to dismiss facially attacks the complaint's allegations as to the existence of subject matter jurisdiction, the Court must presume all allegations contained in the complaint to be true. Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002).

Eleventh Amendment sovereign immunity is considered a limitation on a federal court's subject matter jurisdiction. The Eleventh Amendment renders a state immune from suits brought in federal courts by her own citizens as well as citizens of another state. Pennhurst St. Sch. & Hospital v. Halderman, 465 U.S. 89, 100 (1984). State agencies that qualify as arms of the state possess sovereign immunity, as well. Sturdevant v. Paulsen, 218 F.3d 1160, 1164 (10th Cir. 2000). This immunity applies to a state entity whether a plaintiff seeks declaratory, injunctive, or monetary relief. Fed. Mar. Comm'n v. S.C. State Ports Auth., 535 U.S. 743, 765 (2002); Ellis v. Univ. of Kan. Med. Ctr., 163 F.3d 1186, 1196 (10th Cir. 1998). However, the Supreme Court has recognized two instances in which an individual may nonetheless sue a state: (1) where the suit is authorized by Congress, and (2) where a state voluntarily waives its sovereign immunity. Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999). Absent congressional

authorization or waiver, federal courts do not have subject matter jurisdiction over states or arms of states.

Both the Tenth Circuit and this Court have repeatedly recognized that OKDHS is an arm of the State of Oklahoma to which Eleventh Amendment immunity applies. McKinney v. State of Okla., Dep't of Human Servs., 925 F.2d 363, 365 (10th Cir. 1991); Seaton v. Oklahoma ex rel. Dep't of Human Servs., Case No. 14-CV-780-JED-PJC, 2017 WL 1160579, at *3 (N.D. Okla. March 28, 2017); Legates v. Oklahoma ex rel. Rogers Cty. Dep't of Human Servs., Nos. 09-CV-644-FHM & 09-CV-29-FHM, 2010 WL 4941437, at *4 (N.D. Okla. Nov. 30, 2010). Furthermore, neither exception to sovereign immunity is applicable in this case. It is well-settled that Congress did not abrogate states' Eleventh Amendment immunity when it enacted § 1983. Quern v. Jordan, 440 U.S. 332, 345 (1979). Moreover, plaintiff does not allege, nor is there any indication in the record, that OKDHS has waived its Eleventh Amendment immunity in this case. Therefore, the Court finds that the Eleventh Amendment precludes this Court from hearing plaintiff's claims against OKDHS on the merits. Accordingly, the Court finds that OKDHS's motion to dismiss pursuant to Rule 12(b)(1) should be granted with prejudice for lack of subject matter jurisdiction. Having determined that the Court lacks subject matter jurisdiction to hear plaintiff's claims against OKDHS, the Court does not reach OKDHS's arguments in support of dismissal pursuant to Rule 12(b)(6).

**III.**

Next, the Court considers the two Rule 12(b)(6) motions to dismiss filed by the individually-named defendants. In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to a claimant. Id. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). All individual defendants assert the following bases for dismissal pursuant to Rule 12(b)(6): (1) plaintiff fails to allege sufficient facts to state a claim under § 1983; (2) the individual defendants are entitled to qualified immunity; and (3) plaintiff is not entitled to the injunctive relief sought. In addition, defendants Nowicki, Eagler, Dugger, Gilmore, and Avery argue that plaintiff cannot assert claims on behalf of others (i.e., her child and the child's father).

### A. Failure to State a Claim Under § 1983 and Qualified Immunity

Under § 1983, a person acting under color of state law who "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." The elements necessary to establish a § 1983 violation "will vary based on the constitutional provision at issue." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Regardless of the constitutional provision at issue, however, "[p]ersonal participation is an essential allegation in a § 1983 claim." Bennett v. Passic, 545 F.2d 1260, 1262-63 (10th Cir. 1976). In the context of § 1983 cases against multiple

individual government actors, "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." Robbins v. Oklahoma, 519 F.3d 1242, 1249 (10th Cir. 2008) (emphasis in original). "[T]he complaint must therefore 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face' as to the specific constitutionally impermissible actions allegedly committed by each named defendant to survive a motion to dismiss as to each defendant." Brewer v. Gilroy, 625 Fed. App'x 827, 833 (10th Cir. 2015)[4] (quoting Ashcroft, 556 U.S. at 678) (internal quotations omitted).

Furthermore, "individual defendants named in a § 1983 action may raise a defense of qualified immunity, which shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law." Estate of Booker v. Gomez, 745 F.3d 405, 411 (10th Cir. 2014) (citation, alternation, and quotations omitted). When an individual defendant raises a qualified immunity defense, the onus is on the plaintiff to demonstrate that (1) the defendant violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the defendant's conduct. Mayfield v. Bethards, 826 F.3d 1252, 1255 (10th Cir. 2016). "Ordinarily, '[a] plaintiff may satisfy this [clearly-established law] standard by identifying an on-point Supreme Court or published Tenth Circuit decision [that establishes the unlawfulness of the defendant's conduct]; alternatively, the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'" Cummings v. Dean, 913 F.3d 1227, 1239 (10th

---

[4]  This and other cited unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

Cir. 2019) (quoting Quinn v. Young, 780 F.3d 998, 1005 (10th Cir. 2015) (internal quotations omitted)) (alterations in original). "If the plaintiff fails to establish either prong of the two-pronged qualified immunity standard, the defendant prevails on the defense." A.M. v. Holmes, 830 F.3d 1123, 1134-35 (10th Cir. 2016).

Because a plaintiff can neither state a claim under § 1983 nor overcome an individual defendant's assertion of qualified immunity without demonstrating, at a minimum, that the individual defendant violated her constitutional right, the qualified immunity analysis is "often related, if not identical," to the analysis for determining whether plaintiff states a § 1983 claim. Dodds v. Richardson, 614 F.3d 1185, 1193-94 (10th Cir. 2010). Accordingly, for each individual defendant, the Court will conduct simultaneously these two analyses.

### 1. Defendants Strout, Woodson, and Stinnett

Plaintiff's complaint does not contain any specific allegations against defendants Strout, Woodson, or Stinnett. In fact, the sole instance in which Strout, Woodson, and Stinnett's names appear in the complaint is in plaintiff's list of contact information for each defendant. Dkt. # 1, at 2-3. Because plaintiff does not allege any facts to suggest that defendants Strout, Woodson, or Stinnett "personally participated" in a violation of plaintiff's constitutional rights, the Court finds that plaintiff has failed to state a § 1983 claim against those three defendants. For this same reason, the Court finds that plaintiff has failed to overcome Strout, Woodson, and Stinnett's assertions of qualified immunity. Accordingly, the Court finds that Strout, Woodson, and Stinnett's motion to dismiss should be granted.

## 2. Defendants Nowicki, Eagler, Avery, Gilmore, and Dugger

Plaintiff's complaint contains some allegations that specifically identify defendants Nowicki, Eagler, Avery, Gilmore, and Dugger. The Court must determine whether plaintiff's allegations as to each individual's conduct are sufficient to show that each individual violated a clearly established constitutional right.

As an initial matter, although plaintiff alleges that "[t]he Oklahoma State Department of Human Services violated [her] (1) 4th, (2) 5th, (3) 9th, and (4) 14th constitutional rights," Dkt. # 1, at 1, plaintiff's complaint fails to explicitly state the constitutional rights allegedly violated by each individual defendant. Construing the complaint liberally, the Court assumes that plaintiff intended to allege that each individual defendant (as opposed to defendant OKDHS only) violated her Fourth, Fifth, Ninth, and Fourteenth Amendment rights. The issue, however, is that plaintiff's allegations as to the actions of each individual defendant are far too vague and generalized to allow the Court to determine which constitutional right plaintiff believes was violated by which action of which defendant. It is neither the Court's role nor a defendant's role to guess which constitutional right plaintiff believes was violated by the defendant's action. Rather, it is plaintiff's burden to "articulate the clearly established constitutional right and the defendant's conduct which violated the right with specificity." Albright v. Rodriguez, 51 F.3d 1531, 1535 (10th Cir. 1995); see Walter v. Morton, 33 F.3d 1240, 1242 (10th Cir. 1994) ("[T]he plaintiff . . . has the burden to show with particularity facts and law establishing the inference that the defendants violated a constitutional right."). Nonetheless, the Court reviews the allegations against each of the remaining individual defendants to determine whether each individual is entitled to qualified immunity on any basis.

11

### a. Defendant Nowicki

Plaintiff's complaint alleges that Nowicki "breached [an] established agreement." However, breach of contract, even when committed by a state actor, does not amount to a constitutional violation. Cf. DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 202 (1989) ("[T]he Due Process Clause of the Fourteenth Amendment . . . does not transform every tort committed by a state actor into a constitutional violation.").

Plaintiff also alleges that Nowicki placed tighter restrictions on plaintiff's communications with her child, demanded access to plaintiff's other children, and threatened to have the judge produce those children if plaintiff did not comply. Despite plaintiff's failure to identify the constitutional right at issue, the Court assumes that plaintiff intends to assert a violation of her right to substantive due process under the Fourteenth Amendment. A substantive due process claim requires an examination into whether the complained of state action "shocks the conscience." Uhlrig v. Harder, 64 F.3d 567, 573 (10th Cir. 1995). "[A] plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power. That is, the plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." Id. at 574. Plaintiff has not alleged any facts to support a finding that Nowicki's actions were outrageous in any way, or that they "shock the conscience." Although Nowicki limited plaintiff's communications with her child, plaintiff alleges that such actions were taken in the context of an ongoing proceeding against plaintiff for allegedly neglecting the medical needs of her child. Even assuming that Nowicki's decision to limit plaintiff's communications with her child was a misjudgment, "[q]ualified immunity 'gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all

but the plainly incompetent or those who knowingly violate the law.'" Messerschmidt v. Millender, 565 U.S. 535, 546 (2012) (quoting Ashchroft v. al-Kidd, 131 S. Ct. 2074, 2085 (2011) (internal quotations omitted)). Accordingly, the Court finds that plaintiff has failed to demonstrate that Nowicki violated a constitutional right. Thus, the Court finds that Nowicki is entitled to qualified immunity.

### b. Defendant Eagler

Plaintiff alleges that Eagler failed to intervene when plaintiff asked her to present evidence in order to have the case dismissed, and that Eagler informed plaintiff that she would need to speak with plaintiff's child privately and away from plaintiff. Further, plaintiff alleges that, after the case was dismissed, Eagler informed plaintiff that "it will still read differently on other files and records." Again, these allegations simply do not amount to an allegation of a constitutional violation. First, there is nothing in the complaint to suggest that Eagler was able, authorized, or obligated to present any evidence–especially evidence in plaintiff's possession–to the judge in a pending action brought by OKDHS. Further, it is unclear why plaintiff would ask Eagler to present this evidence, rather than present the evidence to judge herself. Moreover, in response to plaintiff's request to present the evidence, Eagler informed plaintiff that state law requires her to speak to plaintiff's child privately; however, plaintiff refused the private communication. Therefore, the Court finds that plaintiff has failed to allege that Eagler took any actions that amount to a constitutional violation. Accordingly, defendant Eagler is entitled to qualified immunity.

### c. Defendant Avery

According to the complaint, defendant Avery had tried to inform plaintiff that OKDHS was going to take her son. Further, Avery told plaintiff that plaintiff had "presented her with the

13

information too late and to take things up with the judge at this point." Finally, plaintiff alleges that Avery sent plaintiff an email stating that plaintiff was erratic and that her logic and deductions were conspiracy theories, and threatening to have plaintiff's complaint placed into a permanent file. The Court finds that these allegations fail to state a constitutional violation. It is simply not a constitutional violation to inform an individual of the likely consequences of a particular situation, or to inform an individual that she should present favorable information to the judge in a pending action brought by OKDHS. Accordingly, the Court finds that plaintiff has failed to allege that Avery violated a constitutional right, and further finds that Avery is entitled to qualified immunity.

### d. Defendant Gilmore

Plaintiff alleges that defendant Gilmore forcefully removed plaintiff's son from plaintiff's home and had him medically evaluated. The Court considers whether such an allegation states a violation of plaintiff's rights under the Fourth and Fourteenth Amendments.

The Fourth Amendment protects against unreasonable search and seizure. Here, plaintiff alleges that Gilmore seized plaintiff's son from her home. In J.B. v. Washington Cty., 127 F.3d 919, 928 (10th Cir. 1997), however, the Tenth Circuit upheld the district court's ruling that a parent "may not assert a derivative or vicarious claim based on [her child's] Fourth Amendment injuries." Accordingly, plaintiff cannot state a claim under the Fourth Amendment based on defendant Gilmore's seizure of plaintiff's son. In any case, plaintiff alleges that her son was seized pursuant to a warrant. While plaintiff alleges that the warrant was obtained using fraudulent information, plaintiff fails to allege that Gilmore had any role in obtaining the warrant or that she knew that the warrant was allegedly obtained based on fraudulent information. Thus, plaintiff fails to allege any facts to suggest that Gilmore had reason to believe that the warrant was invalid or fraudulent. The

Court finds that plaintiff has failed to show that Gilmore violated a clearly-established right under the Fourth Amendment.

Under the Fourteenth Amendment, a parent has a constitutionally protected liberty interest in the companionship and society of her child. Id. at 927. However, "'[n]ot every statement or act that *results* in an interference with the rights of intimate association is actionable.'" Id. (quoting Griffin v. Strong, 983 F.2d 1544, 1547 (10th Cir. 1993)) (emphasis and alteration in original). Rather, "[t]he conduct or statement must be directed 'at the intimate relationship with knowledge that the statements or conduct will adversely affect that relationship.'" Id. (quoting Griffin, 983 F.2d at 1548). In J.B., the officials seized the plaintiff's child in order to obtain an interview with the child outside her parents' presence to investigate a report of child sexual abuse. Id. at 922. The Tenth Circuit affirmed the district court's finding that the officials' conduct did not impermissibly interfere with the parent's right of familial association, because the plaintiffs did not allege that the officials' actions were motivated by any purpose apart from investigating a report of child sexual abuse. Id. Similarly, here, while plaintiff alleges that Gilmore seized her son from her home, there is no allegation that Gilmore "intended or directed [her] conduct in this matter at the familial relationship of [plaintiff and her child] with knowledge that such conduct would adversely affect that relationship as required by the Tenth Circuit." Id. Plaintiff does not allege that Gilmore seized plaintiff's son for any reason other than to address claims of medical neglect pursuant to a warrant. Absent an allegation of such willfulness or intent, the Court finds that plaintiff has failed to demonstrate that Gilmore violated a clearly-established constitutional right. Thus, the Court finds that Gilmore is entitled to qualified immunity.

### e. Defendant Dugger

Finally, plaintiff alleges that she emailed defendant Dugger regarding defendant Nowicki's misconduct, and that no actions were taken against the misconduct. First, as already discussed, plaintiff has failed to sufficiently show that defendant Nowicki's actions violated a constitutional right. Accordingly, defendant Dugger's alleged failure to address such misconduct cannot rise to the level of a constitutional violation because plaintiff has not shown that there was an underlying constitutional violation. Doe v. Woodard, 912 F.3d 1278, 1290 (10th Cir. 2019) ("Supervisors cannot be liable under § 1983 where there is no underlying violation of a constitutional right by a supervisee."). Moreover, it is well-established that "a denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." Gallagher v. Shelton, 587 F.3d 1063, 1070 (10th Cir. 2009). Thus, the Court finds that plaintiff has failed to show that Dugger's conduct violated a constitutional right. Accordingly, the Court finds that Dugger is entitled to qualified immunity.

Having determined that defendants Nowicki, Eagler, Avery, Gilmore, and Dugger are entitled to qualified immunity, the Court finds that defendants Nowicki, Eagler, Avery, Gilmore, and Dugger's motion to dismiss should be granted pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. However, the Court will allow plaintiff an opportunity to file an amended complaint against the eight individual defendants in order to cure the deficiencies identified herein.

### B. Claim for Injunctive Relief

Because the Court will allow plaintiff an opportunity to amend her complaint, the Court addresses the argument raised by all individual defendants that plaintiff is not entitled to the

injunctive relief sought. Plaintiff seeks money damages, as well as a protective order on behalf of her family, which the Court construes as a request for injunctive relief.[5] Plaintiff does not indicate whether she sues the individual defendants in their individual capacities, official capacities, or both. However, "[s]ection 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." Brown v. Montoya, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011). Accordingly, to the extent plaintiff seeks monetary relief, the Court construes the complaint as being brought against the individual defendants in their individual capacities. To the extent plaintiff seeks injunctive relief, the Court construes the complaint as being brought against the individual defendants in their official capacities.

"Where a plaintiff requests equitable relief, a mere showing that [s]he maintains a personal stake in the outcome of the controversy is insufficient." Jordan v. Sosa, 654 F.3d 1012, 1024 (10th Cir. 2011) (internal citations omitted). "[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." Id. (quoting O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974)) (omission in original). Moreover, as defendants correctly note, "while a plaintiff who has been constitutionally injured can bring a § 1983 action to recover damages, that same plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured in the future." Facio v. Jones, 929 F.2d 541, 544 (10th Cir. 1991).

---

[5] The term "protective order" refers to an order issued by a federal court pursuant to Rule 26(c) to protect parties and witnesses from annoyance, embarrassment, oppression, or undue burden or expense in connection with the discovery process. The Court assumes that plaintiff did not intend to request a protective order, but, instead, meant to request an order enjoining defendants from taking certain actions.

Although plaintiff does not specify whether she has custody of her child at this time, she does allege that OKDHS's case against her has been terminated. In addition, plaintiff does not allege that she has suffered any injury since the termination of her case, nor does she allege that any defendant has taken or has attempted to take any action against her since the termination of her case. Plaintiff's complaint contains allegations of past and completed conduct only, and plaintiff does not allege any facts to suggest that defendants will take any actions against her in the future. Thus, the Court finds that plaintiff has not alleged facts sufficient to establish a continuing injury or a good chance that plaintiff will be likewise injured in the future.

Accordingly, the Court finds that plaintiff's claim for injunctive relief in the form of a protective order should be dismissed for failure to state a claim upon which relief may be granted.

**IT IS THEREFORE ORDERED** that defendant Oklahoma Department of Human Services (OKDHS)'s motion to dismiss (Dkt. # 26) is **granted**. Plaintiff's claims against OKDHS are **dismissed with prejudice**.

**IT IS FURTHER ORDERED** that defendants Trina Strout, Scott Woodson, and Vannessa Stinnett's motion to dismiss (Dkt. # 17) is **granted**. Plaintiff's claims against Strout, Woodson, and Vannessa Stinnett are **dismissed without prejudice**.

**IT IS FURTHER ORDERED** that defendants Charene Nowicki, Margaret Eagler, Ashley Dugger, Naciska Gilmore, and Latressa Avery's motion to dismiss (Dkt. # 18) is **granted**. Plaintiff's claims against Nowicki, Eagler, Dugger, Gilmore, and Avery are **dismissed without prejudice**.

**IT IS FURTHER ORDERED** that plaintiff may file, within **twenty-one (21) days** of the date of this opinion and order, an amended complaint against defendants Strout, Woodson, Stinnett,

Nowicki, Eagler, Dugger, Gilmore, and Avery only, in order to cure the deficiencies identified herein.

**Failure to comply with the requirements set forth in this opinion and order will result in dismissal of this matter.**

**DATED** this 12th day of July, 2019.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE